No. 35,631

In re Estate of Susan A. Casida, Deceased. (Roy Wilson et al., Appellants, v. Maude Toy et al., Appellees.)

(131 P. 2d 644)

Opinion filed December 12, 1942.

*Rodman L. Henry,* of Garnett, was on the briefs for appellants P. A. Petitt and Grace Masters; *Oliver D. Rinehart,* of Paola, was on the briefs for appellant Roy Wilson.

*Ray S. Pierson,* of Burlington, *Bernard L. Sheridan, L. Perry Bishop,* both of Paola, and *Erskine R. Myer,* of Denver, Colo., were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was a proceeding to have admitted to probate an instrument purporting to be the last will and testament of Susan A. Casida, deceased, opposed by her heirs at law. The probate court admitted the instrument to probate. The heirs appealed to the dis-

trict court, where there was an extended hearing. The district court held the instrument to be void as the will of the decedent upon the ground of her lack of testamentary capacity, undue influence of the principal beneficiaries, and the lack of independent advice. The proponents of the will have appealed.

The facts found by the trial court may be summarized or quoted from as follows: Susan A. Casida, widow of William Casida, and a resident of Miami county, died March 9, 1940, at the age of 74 years. She left surviving her as her sole heirs at law two sisters and numerous nephews and nieces. About five years prior to her death she sustained a cerebral hemorrhage from which she never fully recovered and which left her in a weakened and infirm physical condition. She had been confined to her bed two or three months immediately preceding her death. She had been suffering from arteriosclerosis, and another cerebral hemorrhage was the more immediate cause of her death. The instrument purporting to be her will was executed March 4, 1940. By it Roy Wilson, of Paola, was given $100, and $1 each was given to the two sisters and certain of the nephews and the nieces of the decedent. An undivided one-third of the remainder was given to Dr. P. A. Petitt, who had been the family doctor of the decedent and her husband for many years, and two-thirds to Mrs. Grace Masters, who for several years had been living in the home of Mrs. Casida with her husband and son and serving in the capacity of a housekeeper and nurse for Mrs. Casida. In addition to being a claimant under the will Doctor Petitt had filed in the probate court a claim against the estate for $2,525.50 for professional services, and Mrs. Masters had filed a similar claim for $2,600 for services rendered the decedent. Susan A. Casida had executed a will on April 9, 1938, by the terms of which her property had been devised or bequeathed to her heirs at law in varying amounts.

Doctor Petitt, in addition to having been the personal physician of the deceased for many years had also—

". . . been taken into the complete confidence by the said Mrs. Casida, as her financial and business adviser and agent, and in connection therewith she had turned over to the said Doctor Petitt all of her money and cash and bonds owned and possessed by her, which same included three postal savings certificates in the sum of $500 each; three checks in the sum of $125 each; and one check in the sum of $1,125. The total of said checks being $1,500.

"Of the foregoing property, Doctor Petitt returned to the executor of the Susan A. Casida estate the three postal savings certificates; also his personal

note in the sum of $250, which sum he stated represented a loan he had made to himself out of said funds; and also the sum of $136 in cash. Doctor Petitt has made no accounting or detailed report of the remainder of the funds which he received from said deceased, to the executor of said estate, nor to the probate court of Miami county, Kansas. He admitted having paid the sum of $1,000 out of said funds thus received, upon an obligation he owed to the Miami County National Bank of Paola, Kan. This sum has not been returned to said estate. Said property was held by Doctor Petitt in trust for Mrs. Casida.

"On the morning of March 4, 1940, the said Mrs. Grace Masters telephoned to the said Mr. Roy Wilson, who is a professional mortician in the city of Paola, Kan., to come to the home of Mrs. Casida. When he arrived at said home he was informed that it was desired that he draw a will for Mrs. Casida. He was further informed that, by its terms, the said Mrs. Grace Masters was to be the devisee· of 'the home place of Mrs. Casida.' Mr. Wilson very promptly, and very properly declined to draw up any will for Mrs. Casida, giving as his reasons that he was not a lawyer, and the further reason that he deemed that would be ethically improper for him to do so. Later on the same morning, Mr. Wilson informed Doctor Petitt of the request that had been made of him, and of his refusal to attempt to comply therewith.

"Doctor Petitt then went to the bedside of Mrs. Casida and conferred with her about the matter of her making a will, and made written memorandum of the terms thereof, including the proposed devise to himself of one-third of the residue of Mrs. Casida's estate, and the proposed devise to Mrs. Grace Masters, who was present at said time and conferring with Doctor Petitt, of two-thirds of the residue of said estate.

"The written memoranda which was prepared by Doctor Petitt at said time also included a notation that Mr. Roy Wilson was to be named as devisee of the sum of $100 in said proposed will, and that certain heirs of said Susan A. Casida were each to be devised the sum of $1. The names of said heirs were furnished to Doctor Petitt by Mrs. Masters at said time. Only a portion of the heirs of Mrs. Casida were named, and the names of a larger portion of such heirs were omitted. A portion of the names and addresses given to Doctor Petitt were erroneous.

"Doctor Petitt took this memoranda to his office and called Miss Louise Buckley to his office and there delivered it to her, and instructed her to act in the capacity of scrivener of the will of Mrs. Casida, making the terms and conditions of said will correspond to said written memoranda. Miss Buckley, being a recognized expert stenographer and typist, implicitly followed the instructions she received from Doctor Petitt, and typed the instrument which was later offered to probate as the last will and testament of Susan A. Casida, deceased.

"On the afternoon of March 4, 1940, Doctor Petitt instructed his office assistant, Miss Rosemary Buckley, a sister of Miss Louise Buckley, to go in his, Doctor Petitt's car, to the office where Miss Louise Buckley was employed, and take Miss Buckley, and the witnesses of her selection, who were employees at the same office, to the home of Mrs. Casida for the purpose of having said written instrument signed by Mrs. Casida.

"Miss Louise Buckley read said instrument to Mrs. Casida, who was lying in her bed, before the same was signed. Miss Buckley asked Mrs. Casida if that was the way she wanted it, and she answered in the affirmative.

"Mrs. Casida was then so weak that she had to be assisted to a sitting posture, to sign her name to said instrument. Mrs. Masters was present and placed Mrs. Casida in a position that would permit her to write her name.

"Mrs. Casida signed said instrument in the presence of the two attesting witnesses whose names appear thereon, and they signed their names as such witnesses in the presence of each other and in the presence of Susan A. Casida.

"The said written instrument, as signed by Susan A. Casida, contains all of the terms and provisions which were given in the instructions of Doctor Petitt to Miss Louise Buckley, and none other. Miss Buckley had no personal interest in said will. She acted only in the capacity of scrivener. She is not an attorney at law.

"Mrs. Casida had no opportunity to, and did not, in fact, receive any independent and competent legal advice relative to the purport and effect of the terms and conditions of said written instrument as her last will and testament, before her signing the same.

"At the time of the signing of said written instrument by the said Susan A. Casida, her mental condition was such that she was unable to know and to remember and to designate the names of those persons comprising her relatives, who might have some claim upon her bounty. She was unable to know and to comprehend and to understand, at said time, the nature and extent of her property which was then owned by her.

"By reason of those facts and conditions, the said Susan A. Casida was, at said time, mentally incompetent to make a valid will.

"The said Susan A. Casida was not, at said time, free from exercise of undue influence and restraint which had theretofore been imposed upon her.

"The said Doctor P. A. Petitt and Mrs. Grace Masters, by reason of the trusted positions of confidence and their confidential relationships which they had acquired with the said Susan A. Casida, possessed a strong and controlling influence over her, and in connection therewith, they imposed upon her their own desires relative to the terms and conditions which they caused to be put in said written instrument, by reason of which, said written instrument does not contain those terms and conditions which accorded with the expressed wishes which Mrs. Casida had given to Mr. Wilson on said date."

The court's conclusions of law were that the instrument dated March 4, 1940, was not valid as the will of Susan A. Casida, deceased, for the reason that at that time she was not in possession of sufficient mental capacity to make and publish a valid will; that she was not of mental capacity to know and comprehend the nature and extent of her property, did not possess mental capacity to know and understand the legal import and the legal effects of its terms and conditions, and to know and to remember and to designate the names of those persons comprising her relatives who might have a claim upon her bounty, and for the further reason that she was under the

undue influence and restraint which had been exercised and imposed upon her by Doctor P. A. Petitt and Mrs. Grace Masters, and that the said instrument was ineffectual to pass any of the property of the deceased. The judgment of the court was that the instrument in writing, dated March 4, 1940, "purporting to be the last will and testament of the said Susan A. Casida, late resident of Miami county, Kansas, is void and of no force and effect as the will of said deceased. It is by the court further adjudged and decreed that the said Susan A. Casida died intestate . . ."

Appellants argue that there was no substantial competent evidence to sustain a finding of mental incompetency or of undue influence, that the findings of fact are contrary to the evidence, inconsistent with each other, and that the judgment is inconsistent with the findings of fact and conclusions of law and the evidence. We have carefully examined the evidence and considered the argument of counsel and the authorities cited. The most that can be said in appellants' behalf is that there was some conflict in the evidence. We find an abundance of substantial competent evidence to sustain the finding of the court of the lack of testamentary capacity. Indeed, there is evidence that for several months prior to her death the deceased lacked mental capacity to know and understand the nature and extent of her property and the names and relationship to her of her heirs at law who would be the natural recipients of her bounty. It is clear that the will was really prepared by Doctor Petitt, who was her confidential financial agent and adviser, and who had failed miserably in carrying out the trust she previously had imposed upon him. The fact that Mrs. Masters aided and abetted Doctor Petitt in procuring a will from Mrs. Casida which left to the two of them practically all of her property is sustained in part by direct evidence and in part by the inferences which the trial court might well have drawn from many facts and circumstances shown by the evidence. It would answer no useful purpose, either to the litigants or to the profession, to set this evidence out and analyze it at length.

On the question of undue influence appellants cite *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, upon the extent of undue influence, and other cases of like import. In that case, however, and in the others cited, the testator was not mentally incompetent. Obviously it takes much less evidence to sustain a finding of undue influence upon a person whose mentality is such that he can no longer understand or com-

prehend the nature and extent of his property, or to know and to remember and to designate the names of those persons comprising his relatives who might have a claim upon his bounty. We find no inconsistency between the findings and the conclusions of law and judgment of the court.

Appellants object to the finding of the court that Mrs. Casida did not receive any independent and competent legal advice relative to the purport and effect of the terms and conditions of her will. We think the finding was justified and that the lack of such advice was sufficient to render the will invalid. (See G. S. 1941 Supp. 59-605.)

Appellants complain of the order of the court refusing to permit them to have certain witnesses testify in rebuttal. We think the order of the court was not erroneous. At the trial in the district court the proponents had introduced several witnesses as to the mental competency of Mrs. Casida and had rested. The opponents of the will introduced several witnesses who testified as to her lack of mental capacity. In rebuttal the proponents of the will offered additional witnesses who, their counsel stated, would testify to the mental competency of the decedent. Clearly the testimony offered was simply cumulative of that which the proponents had offered in chief and was not properly rebuttal as to any of the evidence offered by the opponents. More than that, the evidence of such witnesses has not been brought into the record by affidavit or otherwise (G. S. 1935, 60-3004), and neither the trial court nor this court has any way of telling what it would have been.

The trial court assessed the court costs against Doctor Petitt and Mrs. Masters. As appellants here they complain of that ruling and say they filed no pleadings in court and really were not parties to the action. While it is true they filed no pleadings, it cannot be said that they were not principal parties in interest in having the instrument sustained as the will. They had an attorney, apparently employed by them, who appeared in the probate court but who, after the case had been appealed to the district court, withdrew as their attorney by permission of the court. Whether they had attorneys appearing for them during the trial in the district court is not clear from the record, but an attorney acting for them filed a motion to set aside the findings of fact, without stating in what particular they were erroneous, and also filed a motion for a new trial and joined in the notice of appeal and in the brief here. The pertinent portion of the section of our statutes on this point (G. S. 1941 Supp. 59-1504) reads:

"Whenever any person named in a will, . . . · prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, . . . he shall be allowed out of the estate his necessary expenses. . . ."

The trial court's judgment taxing the costs to Doctor Petitt and Mrs. Masters is tantamount to a finding that they had not acted in good faith. We think there was no error in the ruling. (See *In re Estate of Faust,* 150 Kan. 784, 96 P. 2d 680.)

We find no error in the record. The judgment of the court below is affirmed.